IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| SHIRLEY Y. M. CUMMINS, *et al.*, | ) ) ) |  |
| Plaintiffs, | ) ) | No. 23-308 |
| v. | ) ) ) | Filed: May 31, 2024 |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) ) ) |  |

**OPINION AND ORDER**

Plaintiffs Shirley Y. M. Cummins, David P. Giamellaro, Carolyn A. Gonzalez, Albert E. Miller, and Rosa Carmina Rodriguez, for themselves and on behalf of other similarly situated persons (collectively "Plaintiffs"), assert claims for underpayment of salary, retirement annuity, and Thrift Savings Plan ("TSP") contributions as federal employees in non-foreign areas. Before the Court is the Government's Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons stated below, the Court **GRANTS** the Government's Motion.

**I.     BACKGROUND**

**A.     Statutory Framework Regarding Federal Pay in Non-Foreign Areas**

This case arises out of a dispute over federal employee pay in non-foreign areas located outside the contiguous United States. In addition to their base salaries, federal employees working in these areas receive a cost-of-living allowance ("COLA"), which is calculated based on "living costs substantially higher than in the District of Columbia." 5 U.S.C. § 5941(a). COLA payments are not included in gross income for federal tax purposes and are not included in "basic pay" for purposes of retirement calculations, such as annuities and TSP contributions. *See* 26 U.S.C. §

912(2) (exempting COLA from gross income and taxation); 5 U.S.C. §§ 8331(3)–(4) (excluding "allowances" from "basic pay" and "average pay" for the Civil Service Retirement System ("CSRS")), 8401(3)–(4) (same for the Federal Employees' Retirement System ("FERS")), 8432 (same for TSP contributions). Consequently, under these statutes and related regulations, employees receiving COLA payments earn lower retirement annuities than they would earn if the COLA payments were included in their basic pay.

In 1990, Congress enacted the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), providing for federal employees to receive comparability payments, or "locality pay." *See* Pub. L. No. 101-509, § 529, 104 Stat. 1389, 1427–69 (1990) (codified at 5 U.S.C. § 5301 *et seq.*); 5 U.S.C. § 5304. Unlike COLA payments, locality pay is compensation that employees receive due to salary disparities between the General Schedule and non-federal salaries in each geographic area. *See* 5 U.S.C. § 5304(d)(1). Locality pay is also different from COLA in that locality pay is included in "basic pay" for purposes of retirement calculations. *Id.* § 5304(c)(2)(A). Congress intended for FEPCA to reduce pay disparities between federal and non-federal employees performing similar work, *id.* § 5301, but initially FEPCA only applied to federal employees in the contiguous United States, *see* 5 U.S.C. § 5304(f)(1) (2008) (expressly excluding localities "outside the continental United States, as defined in section 5701(6)"); *id.* § 5701(6) (defining "continental United States" as "the several States and the District of Columbia, but [] not includ[ing] Alaska or Hawaii"). Accordingly, from 1990 to 2009, federal employees in the contiguous United States received locality pay on top of their base salary, while federal employees in non-foreign areas received COLA payments.

Recognizing the growing disparity in retirement annuities between federal employees in the continental United States and non-foreign areas, Congress enacted the Non-Foreign Area

Retirement Equity Assurance Act of 2009 ("Non-Foreign AREA Act"), which transitioned non-foreign area employees to the locality pay system by phasing out COLA and phasing in locality pay over a three-year period. *See* Pub. L. No. 111-84, tit. XIX, subtit. B, §§ 1911–19, 123 Stat. 2190, 2619–27 (2009) (amending 5 U.S.C. §§ 5304–05, 5941 and 39 U.S.C. § 1005(b)); 5 U.S.C. §§ 5304(f)(1) ("each General Schedule position in the United States, as defined under section 5921(4), and its territories and possessions, including the Commonwealth of Puerto Rico and the Commonwealth of the Northern Mariana Islands, shall be included within a pay locality"), 5921(4) (defining the geographic United States as "the several States and the District of Columbia").

### B. Prior Litigation

The applicability of locality pay to federal employees in non-foreign areas and the exclusion of COLA from the definition of "basic pay" for purposes of retirement annuities are matters that have been litigated previously. Decisions in three previous class actions challenging the statutory scheme for compensation of federal employees in non-foreign areas are particularly relevant to the instant litigation: *Matsuo v. United States* (*Matsuo I*), 416 F. Supp. 2d 982 (D. Haw. 2006); *Cruz v. United States*, No. 1:09-cv-79, 2012 WL 3573659 (D.V.I. Aug. 13, 2012) (involving two plaintiffs also named in the present case); *Rodriguez v. United States*, No. 3:14-cv-1193, 2015 WL 5008306 (D.P.R. Aug. 20, 2015) (involving three plaintiffs also named in the present case).

The *Matsuo* plaintiffs challenged the calculation of their retirement benefits on two grounds. 416 F. Supp. 2d at 986. First, they alleged that FEPCA's exclusion of federal employees in non-foreign areas from receiving locality pay violated the Equal Protection Clause and the Due Process Clause of the Fifth Amendment. *Id.* Second, the plaintiffs alleged that the exclusion of COLA in retirement calculations was both a violation of the Due Process Clause of the Fifth

Amendment and was based on an arbitrary and capricious interpretation of the disputed retirement statute. *Id.* The Government moved to dismiss or transfer the case, arguing that the plaintiffs' locality pay claims properly fell within the jurisdiction of the Court of Federal Claims under the Tucker Act, and that the plaintiffs' retirement claims were precluded by the exclusive administrative review process designed by Congress. *See id.* at 986–97. The court declined to transfer the plaintiffs' locality pay claims, holding in relevant part that the constitutional claims were not money-mandating, and thus this Court lacked jurisdiction to hear them. *Id.* at 992.[1] The court then dismissed the retirement claims, holding that "[r]etirement computation is a matter within [the Office of Personnel Management's ("OPM")] administration, and exclusively reserved for appeal to the MSPB, with judicial review available in the Federal Circuit." *Id*. at 998–99.

In *Cruz*, the plaintiffs challenged the exclusion of COLA from "basic pay" for purposes of retirement benefit calculations, this time on the basis that the case presented a systemwide challenge to OPM procedure. *See* 2012 WL 3573659, at *1. In granting the Government's motion to dismiss, the court reviewed the "exclusive" review process established in the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, and held that it lacked jurisdiction "to hear any claims associated with the OPM's exclusion of COLAs from the determination of basic pay[.]" *See id.* at *3–7 (internal quotations omitted).

In *Rodriguez*, the plaintiffs challenged the exclusion of COLA from the "base" used to calculate their retirement benefits, citing the Declaratory Judgment Act and Title VII of the Civil

---

[1] Though the *Matsuo* plaintiffs' salary claims survived a motion to dismiss, the district court subsequently granted summary judgment in favor of the Government after the plaintiffs conceded this claim. *Matsuo v. United States* (*Matsuo II*), 532 F. Supp. 2d 1238, 1247 (D. Haw. 2008) (holding that since the plaintiffs' lacked the necessary property interest in prospective payment of locality pay, they were not entitled to relief on their substantive due process claim), *aff'd*, 586 F.3d 1180 (9th Cir. 2009).

Rights Act of 1964. 2015 WL 5008306, at *1. The court dismissed the plaintiff's Title VII discrimination claims on the grounds that they were barred by the safe harbor provisions and administrative exhaustion requirements of Title VII. *See id.* at *5–7. The court also dismissed the plaintiffs' non-discrimination claims since "challenges to their individual benefit calculations are precluded" by the "exclusive" review procedure set forth in the CSRA. *See id.* at *8. The First Circuit affirmed, holding that "the framework [established in the Civil Service Reform Act] provides the exclusive mechanism for challenging adverse personnel actions in federal employment" and "[a] federal employee generally may not pursue alternative routes of judicial review." *Rodriguez v. United States*, 852 F.3d 67, 82 (1st Cir. 2017).

## C. The Present Litigation

Plaintiffs are a group of current and former federal employees working in non-foreign areas. Pls.' Am. Compl. ¶ 4, ECF No. 8. Plaintiffs filed suit in this Court on March 1, 2023. *See generally* Pls.' Compl., ECF No. 1. After the Government moved to dismiss Plaintiffs' claims pursuant to RCFC 12(b)(1), Plaintiffs filed an Amended Complaint on August 16, 2023. *See generally* ECF No. 8. The Amended Complaint contains six claims which can be grouped into two categories: salary claims (Claims One through Four) and retirement claims (Claims Five and Six). *Id.* ¶¶ 45–50.

Under Claims One and Two, Plaintiffs allege entitlement to back pay for unpaid locality pay from the period of January 1, 1994, through December 31, 2009, pursuant to 5 U.S.C. §§ 5304 and 5304(a). *Id.* ¶¶ 45–46 (citing the Back Pay Act, 5 U.S.C. § 5596). Under Claims Three and Four, Plaintiffs allege entitlement to back pay pursuant to the previous version of 5 U.S.C. § 5941 for the amounts by which COLA has been reduced since the phase-out began on January 1, 2010. *Id.* ¶¶ 47–48 (citing the Back Pay Act). Under Claim Five, Plaintiffs allege entitlement to the

additional amount of retirement benefits that would have accrued if they had been entitled to receive locality pay during the period of January 1, 1994, through December 31, 2009. *Id.* ¶ 49. Under Claim Six, Plaintiffs allege entitlement to an inclusion of COLA in "basic pay" for retirement calculations. *Id.* ¶ 50. Plaintiffs acknowledge that FEPCA and the Non-Foreign AREA Act, as amended by Congress and interpreted by OPM, do not provide Plaintiffs with an entitlement to the pay they seek. *Id.* ¶¶ 6–7, 45–48. Instead, they argue that the amendment and interpretation violate the Due Process and Equal Protection Clauses of the Fifth Amendment and the Bill of Attainder Clause of Article I of the United States Constitution. *Id.*

Plaintiffs seek an award of money damages, as well as injunctive relief ordering "immediate step-ups in the regular pay of current employees and in the annuities of retired employees," "immediate and retroactive increases in agency contributions to the Thrift Savings Plans of eligible Class members," and a "remand of appropriate matters to agencies and agency officials." *Id.* ¶ 4.

On August 30, 2023, the Government moved to dismiss the Amended Complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 9. The Government contends that the Court lacks jurisdiction over the salary claims in Claims One through Four because Plaintiffs have not identified a money-mandating source of law and because this Court lacks authority to issue the equitable relief requested by Plaintiffs. *See id.* at 19–21. For the retirement claims in Claims Five and Six, the Government argues that the exclusive review procedures of the CSRA preclude jurisdiction in this Court. *See id.* at 22–24 (citing 5 U.S.C. §§ 7703, 8347, 8461). Alternatively, the Government argues that even if the Court had subject-matter jurisdiction, Plaintiffs' "claims based on pay checks or annuity payments issued prior to March 1, 2017," are barred by the Court's statute of limitations. *See id.* at 24–27. The

Government's motion is now fully briefed and ripe for decision. *See generally* Pls.' Resp. to Def.'s Mot. to Dismiss, ECF No. 10; Def.'s Reply, ECF No. 12.

## II.  LEGAL STANDARD

Before reaching the merits of an action, the Court must ensure that subject-matter jurisdiction exists. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'") (quoting *Mansfield v. Swan*, 111 U.S. 379, 382 (1884)). If a claim is beyond the Court's limited jurisdiction, it must be dismissed. RCFC 12(b)(1), (h)(3). The plaintiff bears the burden of establishing by a preponderance of evidence the Court's jurisdiction over its claim. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

When deciding whether to dismiss a complaint for lack of subject-matter jurisdiction, the Court generally accepts all factual allegations as true and draws all reasonable inferences in the claimant's favor. *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). When a complaint contains challenged factual allegations, however, the Court may inquire into facts necessary to support jurisdiction and may resolve disputed facts. *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (affirming that a court may consider evidentiary matters outside the pleadings when assessing dismissal under Rule 12(b)(1)).

The Tucker Act grants this Court jurisdiction to hear claims against the United States based on the Constitution, an Act of Congress, a regulation of the Executive Branch, or an express or implied-in-fact contract with the United States. 28 U.S.C. § 1491(a)(1). The Tucker Act, however, does not grant substantive rights. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

To establish jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages[,]" *id.*, and provide a nonfrivolous argument that he is "within the class of plaintiffs entitled to recover under the money-mandating source," *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1307 (Fed. Cir. 2008). If there is no money mandating source of law, this Court must dismiss the case for lack of subject-matter jurisdiction. *Id.* at 1307–08.

Moreover, the Tucker Act does not grant the Court with the power to issue general equitable relief. The Court may only take certain remedial actions "incident of and collateral to any . . . judgment." 28 U.S.C. § 1491(a)(2); *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (stating the Court of Federal Claims "has no power to grant equitable relief"); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007) ("In order for a claim to be brought under either the Tucker Act or the Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances not at issue here.").

Additionally, the Court's jurisdiction to hear claims for money damages against the United States is not absolute. In some instances, Congress has vested another federal court or administrative body with the exclusive right to hear certain money claims against the United States. *See Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1372 (Fed. Cir. 2005) (citing *United States v. Fausto*, 484 U.S. 439, 453–54 (1998)). In such instances, the action does not fall within the Tucker Act and may not be heard in the Court of Federal Claims. *Id.*

### III. DISCUSSION

The Court must dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiffs have not identified a money-mandating source of law for their salary claims to satisfy jurisdiction under the Tucker Act and, further, the Court

lacks jurisdiction to issue the type of equitable relief requested by Plaintiffs.  Separately, Plaintiffs' retirement claims, which challenge OPM's calculation of Plaintiffs' retirement benefits for employees under the CSRS and FERS, are precluded by the CSRA's exclusive review process.

> A.  **Plaintiffs Have Not Identified a Money-Mandating Source of Law for the Salary Claims.**

In Claims One through Four of the Amended Complaint (the salary claims), Plaintiffs allege that the operative provisions of FEPCA and the Non-Foreign AREA Act preventing them from receiving the compensation they seek violate their "rights to due process of law and to equal protection of law under the Fifth Amendment" and constitute "unconstitutional bills[s] of attainder."  ECF No. 8 ¶¶ 6–7, 45–48.  Plaintiffs allege that the Back Pay Act entitles them to back pay, interest, attorney fees, and costs due as a result of these violations.  *See id.*

Plaintiffs do not appear to dispute that none of these constitutional provisions are money-mandating sources of substantive law.  *See* ECF No. 10 at 25–32.  Nor could they given the weight of decisions of both the United States Court of Appeals for the Federal Circuit and other judges of this Court.  *See, e.g.*, *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process Clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (explaining that the Equal Protection Clause does not mandate payment of money by the Government); *Fry v. United States*, 72 Fed. Cl. 500, 507 (2006) (noting that, "[a]rguably, [the Bill of Attainder] Clause is not money-mandating, because it contains no language directly related to a pecuniary interest"); *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007) ("The court does not perceive . . . how the Bill of Attainder Clause can constitute a money-mandating source."); *Treece v. United States*, 96 Fed. Cl. 226, 231 (2013) (dismissing plaintiff's Bill of Attainder claims for lack of jurisdiction).

9

Plaintiffs' reference to the Back Pay Act also cannot fill the money-mandating gap.  As the Federal Circuit has explained, "[u]nless some other provision of law commands payment of money to the employee for the unjustified or unwarranted personnel action, the Back Pay Act is inapplicable."  *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984) (internal citations omitted); *see also Adams v. United States*, 860 F.3d 1379, 1380–81 (Fed. Cir. 2017).

Notwithstanding the above, Plaintiffs appear to argue that the Court has jurisdiction because *if* the provisions of FEPCA and the Non-Foreign AREA Act specifically barring the compensation Plaintiffs seek were to be declared unconstitutional, and thus null and void, *then* the remainder of the statutes would be money-mandating for Plaintiffs.  ECF No. 8 ¶¶ 45–48; ECF No. 10 at 4, 24.  The Government contends that Plaintiffs are effectively seeking a declaratory judgment from the Court regarding the constitutionality of FEPCA and the Non-Foreign AREA Act in order to receive the compensation allegedly due, which is beyond the Court's authority to award.  *See* ECF No. 12 at 2.  And since Plaintiffs have failed to identify any money-mandating source of substantive law, the Government argues Plaintiffs' claims must be dismissed.  ECF No. 9 at 19–21; ECF No. 12 at 2.

The prior litigation of Plaintiffs' claims is particularly relevant to this issue.  As noted above, in *Matsuo*, the plaintiffs brought a class action suit in the U.S. District Court for the District of Hawaii alleging that (1) FEPCA's exclusion of federal employees living in Hawaii and Alaska violated the Equal Protection clause of the Fifth Amendment, and (2) its arbitrary exclusion of those federal employees from receiving locality pay and having COLA payments included in their retirement calculation violated substantive due process under the Fifth Amendment.  *Matsuo I*, 416 F. Supp. 2d at 986.  The Government filed a motion to dismiss contending that the plaintiffs' claims substantively sought money damages under FEPCA, a money-mandating statute, and thus

10

should have been brought in the Court of Federal Claims. *Id.* at 986–88. In response, the plaintiffs argued that their claims were equitable in nature, and thus the Court of Federal Claims did not have jurisdiction. *Id.* at 990. As such, the question before the *Matsuo* court was whether the plaintiffs' claims were based on FEPCA (a money-mandating statute) or the non-money-mandating provisions of the Constitution alleged in the plaintiffs' complaint. *Id.* at 991. Ultimately, the court's answer turned on the type of remedy sought by the plaintiffs.

The *Matsuo* court explained that the crux of the plaintiffs' constitutional claims was that FEPCA, as written, did not mandate that the Government pay them locality pay, but rather unconstitutionally excluded them from receiving it. *Id.* at 992. Accordingly, if the plaintiffs' claims were based on FEPCA, FEPCA could not fairly be interpreted as mandating compensation by the Government for the damages the plaintiffs sustained because FEPCA specifically precludes payment to them. *Id.* Because FEPCA did not impose a duty to pay the plaintiffs locality pay, the Government's failure to do so did not breach FEPCA and FEPCA did not mandate compensation for the Government's allegedly unconstitutional conduct. *Id.* The court held that since the plaintiffs primarily sought equitable relief in the form of declaratory and injunctive relief, the claims were based on the non-money-mandating constitutional provisions that allegedly nullified the contested aspect of FEPCA. *Id.* This made jurisdiction in the district court proper. *Id.* at 996–97. Furthermore, the *Matsuo* court held that the plaintiffs would not have an adequate remedy in the Court of Federal Claims because the lack of a money-mandating basis for the suit would be "fatal" to this Court's jurisdiction. *Id.* at 996 (citing *Fisher*, 402 F.3d at 1173).

The instant case appears to be an attempt to revive and restyle the *Matsuo* plaintiffs' FEPCA arguments, this time adding the Non-Foreign AREA Act as another allegedly unconstitutional money-mandating source of law. *See* ECF No. 8 ¶¶ 45–48. The Court finds

Plaintiffs' arguments as unpersuasive as the *Matsuo* court did. As the Federal Circuit has held, the Tucker Act "require[s] that a plaintiff seeking to invoke the [Court of Federal Claim's] jurisdiction must present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)). "It is not enough that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision will ultimately enable the plaintiff to receive money from the government." *Id.* Simply put, cases seeking relief from the Court other than money damages have never been within its jurisdiction. *See King*, 395 U.S. at 4.

That is not to say that the Court's power to grant equitable relief is non-existent. In limited circumstances, the Tucker Act allows the Court to award injunctive relief that is "an incident of or collateral to" a judgment on a monetary claim that is within its jurisdiction. 28 U.S.C. § 1491(a)(2); *see also id.* § 1491(b)(2) (authorizing the court to award declaratory and injunctive relief in bid protest cases). But "there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." *Nat'l Air Traffic Controllers*, 160 F.3d at 716. Here, Plaintiffs' claims do not seek equitable relief ancillary to—meaning, secondary or subordinate to—their request for monetary relief. They present the exact opposite, since their entitlement to monetary relief is predicated on the Court first finding that equitable relief striking down the challenged provisions of FEPCA and the Non-Foreign AREA Act is warranted. Plaintiffs have not provided any sources of authority demonstrating that granting such relief is within the Court's jurisdiction.[2]

---

[2] Though Plaintiffs cite multiple cases to support their jurisdictional argument, each is unavailing. First, Plaintiffs heavily rely on *Alaniz v. Office of Personnel Management*, 728 F.2d 1460 (Fed. Cir. 1984), for the proposition that this Court has jurisdiction to declare the operative

Indeed, several decisions have held that this Court is without jurisdiction to issue a declaratory judgment concerning the constitutionality of a federal statute. *See Miller v. United States*, 67 Fed. Cl. 195, 199 (2005) (citing *King*, 395 U.S. at 5) (holding the Court lacked jurisdiction to issue a declaratory judgment concerning the constitutionality of the Antiterrorism and Effective Death Penalty Act); *Adair v. United States*, 227 Ct. Cl. 345, 353 (1981) (quoting *King*, 395 U.S. at 5); *Folden v. United States*, 56 Fed. Cl. 43, 60 n.6 (2003) ("To the extent that plaintiffs seek a declaratory judgment on the constitutionality of [a federal statute], this court is not the proper forum to render such a pronouncement." (internal citations omitted)); *Gentry v. United States*, 212 Ct. Cl. 1, 24 (1976) (dismissing plaintiff's request for a declaratory judgment regarding the constitutionality of a provision of the Civil Service Retirement Act of 1930); *see also Meeks v. United States*, No. 07-201C, 2007 WL 5172431, at *5 (Fed. Cl. Aug. 6, 2007) ("This Court does not possess jurisdiction to declare statutes void or unconstitutional."). Plaintiffs have

---

provisions of FEPCA and the Non-Foreign AREA Act unconstitutional. ECF No. 10 at 22–24. As an initial matter, *Alaniz* originated in a district court and concerned the district court's ability to determine whether OPM's existing COLA determinations were discretionary within the meaning of section 701(a)(2) of the Administrative Procedure Act. *Id.* at 1462. Thus, it is not relevant to this Court's jurisdiction. Moreover, the primary holding of *Alaniz* addressed OPM's rulemaking process and methodology for setting COLA rates, which have now been superseded by an express statutory formula. *See id.* at 1463–67; 5 U.S.C. § 5941(c). It did not address this Court's ability to issue declaratory judgments. Plaintiffs' reliance on *United States v. Lovett*, 328 U.S. 303 (1946), and *Kaspersky Lab, Inc. v. United States Department of Homeland Security*, 909 F.3d 446 (D.C. Cir. 2018), is similarly misplaced. In *Lovett*, the Supreme Court invalidated a statute mandating that "no salary or compensation should be paid" to three named federal employees suspected of engaging in "subversive" communist activities. 38 U.S. at 305–13. The Court held that "the purpose of [the statute] was not merely to cut off [the plaintiffs'] compensation . . . but permanently to bar them from government service." *Id.* at 313. It held that a "legislative decree of perpetual exclusion from a chosen vocation . . . designed to apply to particular individuals" is a Bill of Attainder. *Id.* at 316. Since Plaintiffs here make no allegation that they have, individually or as a class, been permanently barred from Government service, *Lovett* is inapposite. *Kaspersky* is similarly unhelpful to Plaintiffs, as there the litigation originated in a district court and the court held that a statutory exclusion preventing the Government from using a specifically named company did *not* constitute a Bill of Attainder. 909 F.3d at 450.

13

essentially asked the Court for a declaratory judgment finding the exclusionary portions of FEPCA and the Non-Foreign AREA Act "null and void," and under the circumstances of this case, the Court has no jurisdiction to grant this requested relief. Accordingly, Plaintiffs' salary claims are dismissed for lack of jurisdiction.[3]

### B. Plaintiffs' Retirement Claims Are Precluded by the CSRA's Exclusive Review Procedures.

In Claims Five and Six, Plaintiffs seek to increase their retirement benefits through the retroactive inclusion of locality pay for non-foreign employees from January 1, 1994, through December 31, 2009, and through the retroactive and proactive inclusion of COLA in the definition of "basic pay." *See* ECF No. 8 ¶¶ 49–50. Since the retirement claims are dependent on Plaintiffs' salary claims, they cannot survive dismissal in light of the ruling above. Even assuming they do, the Court agrees with the Government that these claims are challenges to OPM's calculation of Plaintiffs' retirement benefits; and therefore, they must be pursued under the exclusive review provisions of the CSRA. *See* ECF No. 9 at 22–24.

As the Government correctly explains, OPM has statutory authority to adjudicate in the first instance all claims arising under the statutory provisions establishing the CSRS and FERS. *See* 5 U.S.C. §§ 8347(b), 8461(c); *see also Adams v. Dep't of Def.*, 688 F.3d 1330, 1335 (Fed. Cir. 2012) ("OPM is charged with administering claims under chapter 83, and chapter 84"). A claimant may appeal OPM's administrative actions or orders to the MSPB. 5 U.S.C. § 8347(d)(1) ("[A]n administrative action or order affecting the rights or interests of an individual or of the United

---

[3] In Claim Five, Plaintiffs request the Court to order "correct[ion] [of] payroll records to reflect . . . locality pay" prior to the enactment of the Non-Foreign AREA Act and payment of additional annuity and TSP contributions based on locality pay. ECF No. 8 ¶ 49. To the extent this claim derives from Claims One and Two, Plaintiffs also have failed to identify a money-mandating source of law. *See Fisher*, 402 F.3d at 1173.

States under [the CSRS] may be appealed to the [MSPB] under procedures prescribed by the Board."); *id.* § 8461(e)(1) ("[A]n administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter [regarding the FERS] administered by the Office may be appealed to the [MSPB] under procedures prescribed by the Board."). Final decisions of the MSPB are appealable to the Federal Circuit. *See id.* § 7703(b)(1)(A).

It is well-established that the Court of Federal Claims does not have jurisdiction over a claim for benefits of an employee under the CSRS, and that such a plaintiff "must follow the exclusive procedures provided for in the CSRA in order to obtain the relief they seek." *Ferreiro v. United States*, 72 Fed. Cl. 1, 4–5 (2006); *Lindahl v. Off. of Pers. Mgmt.*, 470 U.S. 768, 798–799 (1985) (holding that, under the CSRA, review of a MSPB decision following an appeal of an OPM decision rests exclusively in the Federal Circuit); *see also Fausto*, 484 U.S. at 447 (holding that the CSRA allows covered employees to appeal an adverse personnel action only to the MSPB, followed by judicial review in the Federal Circuit); *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–16 (2012) (holding that the Federal Circuit has exclusive jurisdiction for judicial review of claims arising under the CSRA). Likewise, claims related to benefits of employees under the FERS must be pursued before the MSPB. *See Miller v. Off. of Pers. Mgmt.*, 449 F.3d 1374, 1377–78 (Fed. Cir. 2006).

Plaintiffs' response is effectively no response. They acknowledge MSPB's "possible" jurisdiction over their claims but argue that the Government's exclusive jurisdiction argument is "collateral to other issues over which the Court clearly has jurisdiction." ECF No. 10 at 21–22. As such, they contend the Court should defer ruling on the issue. *Id.* at 22. Since the Court has found that it does not have jurisdiction over the other claims, there is no reason to delay. And

15

since Plaintiffs chose not to provide a substantive response to this ground for dismissal, they have waived any points in opposition to the Government's argument.[4] *See Phila. Auth. for Indus. Dev. v. United States*, 114 Fed. Cl. 519, 527–28 (2014).

Accordingly, the Court lacks jurisdiction to review Plaintiffs' retirement claims, and they must be dismissed.[5]

## IV.  CONCLUSION

For these reasons, Plaintiffs' action against the United States must be dismissed without prejudice for lack of jurisdiction under RCFC 12(b)(1).  The Government's Motion to Dismiss (ECF No. 9) is **GRANTED**, and the Clerk is directed to enter judgment accordingly.

**SO ORDERED.**


Dated: May 31, 2024                          */s/ Kathryn C. Davis*
                                             KATHRYN C. DAVIS
                                             Judge

---

[4] To the extent Plaintiffs suggest that the MSPB's jurisdiction to review OPM decisions is permissive and not exclusive (*see* ECF No. 10 at 21), the Court notes that the *Matsuo* plaintiffs attempted the same argument.  *See Matsuo I*, 416 F.2d at 998–99 (summarizing argument that § 8347(d)(1)'s and § 8461(e)(1)'s use of the word "may" made appeal to the MSPB optional rather than mandatory).  The district court was unpersuaded, explaining that precedent "uniformly" holds that federal employees under the CSRS and FERS must bring related challenges through the "exclusive" statutory remedial schemes.  *Id.*; *see also Cruz*, 2012 WL 3573659 at *3–6; *Rodriguez*, 2015 WL 5008306 at *8.  The Court agrees.

[5] Because the Court must dismiss all claims for lack of jurisdiction, it need not consider whether a portion of the claims that arose prior to the six-year limitations period must likewise be dismissed as time barred by 28 U.S.C. § 2501.  *See* ECF No. 9 at 24–27.